NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NAM V. NGUYEN, *Plaintiff/Appellee,*

*v.*

ANH T. NGUYEN, et al., *Defendant/Appellants.*

No. 1 CA-CV 23-0360
FILED 3-12-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-002860
The Honorable Katherine Cooper, Judge

**AFFIRMED**

---

COUNSEL

AZ Legacy Law Group PLLC, Phoenix
By Luan Mai
*Counsel for Plaintiff/Appellee*

Law Office of Kimberly A. Eckert, Tempe
By Kimberly A. Eckert
*Counsel for Defendant/Appellants*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Michael S. Catlett joined.

---

**M O R S E**, Judge:

¶1 Ahn Nguyen and Quy Van Hoang appeal from the superior court's judgment, entered after a bench trial, quieting title to a property in Phoenix (the "House") in favor of Nam Nguyen. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 In 1997, Nam[1] provided his son Hieu Nguyen and daughter-in-law Hongyen Le with a $5,000 downpayment to purchase the House. Because Nam could not qualify for the mortgage, Hieu and Hongyen titled the House in their names. From 1997 until 2010, Nam lived at the House with Hieu and Hongyen. In 2010, Hieu and Hongyen moved out of the House. In 2011, Hieu and Hongyen signed a quitclaim deed transferring their interest in the House to Quy and Ahn, Nam's son-in-law and daughter. Quy and Ahn lived with Nam for several months in 2011 but then moved to Colorado. In 2022, Nam filed a complaint against Quy and Ahn seeking to quiet title to the House and damages for unjust enrichment.

¶3 At trial, Nam, Hieu, and Hongyen testified about the initial purchase of the House and their arrangement from 1997 to 2010. Hieu and Hongyen both testified that Nam was the true purchaser of the House and they had only titled the House in their name for financing purposes. Nam also testified that he paid the utilities while living with Hieu and Hongyen. Hieu testified that Nam paid all mortgage payments between 1996 and 2011, and Hongyen testified that Nam gave her money to pay off the mortgage when they moved out of the House.

¶4 Nam, Hieu, and Hongyen all testified that after Hieu and Hongyen moved, Nam paid for the House's repairs, utilities, insurance, and

---

[1] Because several of the parties and witnesses share a last name, we refer to them by first name.

property taxes between 2011 and the time of trial. Nam also submitted checks purporting to represent these payments. Nam testified that he did not receive financial assistance from Quy and Ahn in paying for the mortgage and utilities.

¶5            Quy and Ahn claimed they purchased the House from Hieu and Hongyen for $95,000 in 2010. Quy testified that he paid Hieu and Hongyen with a $66,625.90 cashier's check but also said he paid $95,000 if he added up all the funds. Quy and Ahn further testified that Nam paid them $55,000 for the right to remain in the House until he died. But Quy and Ahn did not present any documentary evidence of the payment. Nam denied this claim and testified that he did not pay Quy and Ahn any money. At trial, Ahn deferred to Quy and was frequently unable to answer questions regarding finances, payments, and paperwork.

¶6            Quy produced a quitclaim deed notarized by Quy's tax preparer that transferred Hieu and Hongyen's interest to Quy and Ahn. But both Hieu and Hongyen testified that they never received any money from Quy and Ahn and did not understand the quitclaim deed because they did not speak English. And Nam testified that, to pay the mortgage, he borrowed approximately $40,000 from Quy, which Quy distributed in $1,000–$2,000 monthly increments.

¶7            In its judgment, the superior court quieted title in favor of Nam. The court found Hieu and Hongyen acquired and held the House in trust for Nam. In evaluating the evidence, the court found Hieu and Hongyen credible because they "responded to questions directly and non-evasively." In contrast, the court found Quy and Ahn lacked credibility because Quy "contradicted himself and his discovery responses" and Ahn "was defensive and deferred to her husband throughout the testimony."

¶8            The superior court found the quitclaim deed did not transfer title to Quy and Ahn because Hieu and Hongyen did not have any rights to transfer. The court also found the deed was void for lack of capacity and mutual consent because Hieu and Hongyen did not understand the contents of the deed and did not wish to deprive their father of the House. The court dismissed Nam's unjust enrichment claim because Nam was the true owner of the House.

¶9            Quy and Ahn timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶10        Quy and Ahn argue the superior court erred by quieting title in favor of Nam and finding their affirmative defenses waived.  "On review after a bench trial, we accept the superior court's factual findings unless clearly erroneous," but review de novo "any questions of law, including the ultimate legal conclusions drawn from the superior court's factual findings." *Lake v. Hobbs*, 254 Ariz. 570, 574, ¶ 13 (App. 2023), *vacated on other grounds*, CV 23-0046-PR, 2023 WL 7289352 (Ariz. Mar. 22, 2023) (decision order).

I.        **Standing.**

¶11        Quy and Ahn assert Nam lacked standing to bring the action because he was not the legal owner of the House.  But A.R.S. § 12-1101(A) permits a quiet title action to be brought "by any one having or claiming an interest therein, whether in or out of possession, against any person . . . [who] claims an estate or interest in the real property which is adverse to the party bringing the action."  Because Nam's claim of ownership is directly adverse to Quy and Ahn's claim, Nam has standing.

II.        **Waiver of Affirmative Defenses.**

¶12        Arizona Rule of Civil Procedure 12(h)(1)(B) provides that an affirmative defense is waived if a party fails to either "make [the defense] by motion under this rule" or "include it in a responsive pleading."  But even if a party pleads an affirmative defense in their answer, the party may waive that defense by subsequent litigation conduct.  *City of Phoenix v. Fields*, 219 Ariz. 568, 574, ¶¶ 27–29 (2009).  Waiver by litigation conduct is generally a factual determination to which we must defer "unless we conclude that the finding is clearly erroneous." *Minjares v. State*, 223 Ariz. 54, 58, ¶ 17 (App. 2009); *see Fields*, 291 Ariz. at 575, ¶ 32 ("Typically, waiver is 'a question of fact.'").  A party waives a defense when it "has taken substantial action to litigate the merits of the claim that would not have been necessary had the [party] promptly raised the defense." *Fields*, 291 Ariz. at 575, ¶ 30 (quoting *Jones v. Cochise County*, 218 Ariz. 372, 380, ¶ 26 (App. 2008)); *see Ponce v. Parker Fire Dist.*, 234 Ariz. 380, 383, ¶ 11 (App. 2014) (finding waiver when a party "engages in substantial conduct to litigate the merits that would not have been necessary had the defendant not delayed in asserting the defense").

¶13        Quy and Ahn argue the superior court erred in finding their affirmative defenses waived.  We address each in turn.

### A.      Verified Complaint.

**¶14**        During closing argument, Quy and Ahn's counsel argued Nam's complaint was invalid because it was not verified.  The superior court found Quy and Ahn waived the defense because they raised it for the first time at trial.  On appeal, Quy and Ahn argue they did not waive the defense because A.R.S. § 12-1102 requires a verified complaint.

**¶15**        Quy and Ahn never filed a motion to dismiss and failed to raise the complaint's lack of verification in their answer.  Thus, the superior court did not err in finding that Quy and Ahn waived this defense.  *See* Ariz. R. Civ. P. 12(h)(1)(B) (waiving a defense when the defendant fails to "make it by motion" or "include it in a responsive pleading"); *Michael Weller, Inc. v. Aetna Cas. & Sur. Co.*, 126 Ariz. 323, 327 (App. 1980) (noting a party's failure to raise a complaint's lack of verification by pretrial motion waives the defense when the party proceeds to a merits hearing).

### B.      Statute of Limitations.

**¶16**        During closing argument at trial, Quy and Ahn argued Nam's action was time barred because the statute of limitations expired by 2015. *See* A.R.S. § 12-522.  The superior court found the defense waived because Quy and Ahn never raised the defense by motion and instead litigated the case for two years.

**¶17**        Quy and Ahn argue they did not waive their statute-of-limitations defense because they raised it in their answer and A.R.S. § 12-1104 does not require filing a motion to dismiss on statute-of-limitations grounds.  But A.R.S. § 12-1104 is a jurisdictional statute, and it applies only when the "*plaintiff* would have a defense by reason of limitation." (Emphasis added.)  And pleading a defense in an answer is insufficient when the party proceeds to engage in subsequent litigation conduct.  *Fields*, 219 Ariz. at 574, ¶¶ 27–29; *see Harding v. Ariz. Bd. of Dental Exam'rs*, 1 CA-CV 18-0597, 2019 WL 6713433, at *3, ¶ 17 (Ariz. App. Dec. 10, 2019) (mem. decision) (recognizing the statute of limitations is an affirmative defense that may be waived by litigation conduct).  Because Quy and Ahn did not raise their statute-of-limitations defense in either a motion to dismiss or a motion for summary judgment, and only raised it in closing argument at the end of trial, the superior court did not clearly err in finding waiver by litigation conduct.  *See Minjares*, 223 Ariz. at 58, ¶ 17.

### C. Statute of Frauds.

¶18 On appeal, Quy and Ahn argue the statute of frauds prevents Nam's quiet-title action because it involves the transfer of real property. But in their answer, Quy and Ahn only stated that the "state [sic] of frauds applies as the relevant agreements were between Defendant and a non-party." And in their pretrial statement, the parties merely listed the "Statute of Frauds, or an exception thereto," as issues of law to be decided. Quy and Ahn never provided authority or factual support to demonstrate that the statute of frauds applied as an affirmative defense. Moreover, they never raised it by pretrial motion, and, unlike the statute-of-limitations and verified-title defenses, Quy and Ahn did not even urge the statute of frauds as a defense during closing argument. As a result, the superior court did not make explicit findings that Quy and Ahn had waived this defense by litigation conduct.

¶19 But the "general law in Arizona is that legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits. If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal." *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) (citation omitted); *see Risner v. Alev*, 2 CA-CV 2021-0122, 2022 WL 3025585, at *2, ¶ 8 (Ariz. App. Aug. 1, 2022) (mem. decision) ("An argument must be made below to allow the trial court to address the issue on its merits. If it is not, the argument is waived. An argument cannot merely be hinted at during the litigation." (cleaned up)). The "statute of frauds is an affirmative defense," *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 510, ¶ 34 (App. 2005), and a party must "plead and prove the statute of frauds for it to be available," *Abner v. Ariz. Newspapers, Inc.*, 11 Ariz. App. 237, 240 (1970); *see Forbach v. Steinfeld*, 34 Ariz. 519, 525 (1928) ("A party may, undoubtedly, without trenching upon public policy, waive the defense . . . of the statute of frauds . . . by omitting to set up the defense when sued." (quoting *Shapley v. Abbott*, 42 N.Y. 443, 452 (1870))). Because Quy and Ahn did not present a statute-of-frauds defense to the superior court, they have waived this issue on appeal. *See Kellejian v. Kesicki*, 126 Ariz. 12, 13 (App. 1980) (finding defendant's failure to "plead and prove" the statute of frauds before the trial court precluded raising that issue on appeal).

## III. Evidence and Witness Credibility.

¶20 Quy and Ahn argue the superior court erred by voiding the quitclaim deed. They argue that Nam, Hieu, and Hongyen all provided

inconsistent testimony, the parties do not dispute Nam told Hieu and Hongyen to sign the quitclaim deed, and Nam did not provide evidence of financial payments showing his ownership prior to 2011.

**¶21** But "[f]actual findings are not clearly erroneous if substantial evidence supports them, even if there is substantial conflicting evidence." *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 295, ¶ 9 (App. 2000); *see Smith v. Ariz. Dep't of Transp.*, 146 Ariz. 430, 432 (App. 1985) ("If two inconsistent factual conclusions could be supported by the record, then there is substantial evidence to support [a] . . . decision that elects either conclusion."). "Substantial evidence is evidence which would permit a reasonable person to reach the trial court's result." *In re Est. of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999). And "we do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action." *Id.*

**¶22** The superior court considered evidence that: (1) Nam provided $5,000 for the House's downpayment; (2) Nam paid for the House's mortgage and other expenses; (3) Quy and Ahn either never paid Nam $40,000 or were reimbursed for the sum; and (4) Hieu, Hongyen, and Nam did not understand the contents or effect of the quitclaim deed which was notarized and possibly drafted by Quy and Ahn's tax preparer. Although Quy's and Ahn's testimony contradicted many of these assertions, the court found their testimony "wholly unreliable." We must defer to the superior court's resolution of conflicting evidence. *Id.* On this record, a reasonable person could find Nam was the true owner of the House and the court's judgment was not clearly erroneous. *See In re $26,980.00*, 199 Ariz. at 295, ¶ 9.

## IV.    Quitclaim Deed.

**¶23** Quy and Ahn argue the superior court erred in setting aside the quitclaim deed because the complaint did not provide a basis to conclude the quitclaim deed was invalid due to lack of capacity or mutual assent. But the court did not set aside the deed solely on that basis. Rather, the court found the deed was invalid because Hieu and Hongyen did not have any ownership interest in the House to convey via a quitclaim deed. Based on the superior court's evaluation of the documents submitted by Nam and witness testimony, it found the evidence "rebuts any presumption arising from the quitclaim deed." On this record, substantial evidence supported the decision, and the court did not clearly err. *See In re $26,980.00*, 199 Ariz. at 295, ¶ 9.

## V.    Attorney Fees on Appeal.

**¶24**        Nam requests an award of attorney fees and costs pursuant to A.R.S. § 12-341 and ARCAP 21.  Section 12-341 authorizes an award of costs but is silent as to fees.  We deny Nam's request for fees because he fails to cite authority authorizing an award of fees.  *See* ARCAP 21(a)(2) ("A claim for fees under this Rule must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees."); *Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31 (App. 2010) (explaining ARCAP 21 "is a procedural rule that does not provide a substantive basis for an appellate court to consider an award of attorneys' fees").  We award Nam, as the prevailing party, his costs on appeal upon compliance with ARCAP 21.

### CONCLUSION

**¶25**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA